UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SABRINE WALTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALTIUS INSPIRO U.S., INC.,<br><br>Defendant. | Case No. 2:25-cv-00482-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Before the Court is Plaintiff's Motion for Court-Authorized Notice pursuant to 29 U.S.C. § 216(b). (Dkt. 30). The matter is fully briefed and ripe for consideration. Having reviewed the submissions and entire record, the Court finds the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process and, therefore, the motion will be decided on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons that follow, the Court will grant conditional certification and certain other unopposed

ORDER - 1

requests, and will direct the parties to meet and confer to revise the language of the proposed notice and to resubmit a joint notice for the Court's review and approval.[1]

## BACKGROUND

Plaintiff, Sabrine Walters, worked for Defendant Altius Inspiro, U.S., Inc. (Inspiro), as a customer service representative (CSR), providing call-in customer service as a remote Global Expert from approximately September 2021 to January 2024. (Dkt. 1 at ¶ 21). On August 25, 2025, Walters initiated this lawsuit against Inspiro, raising a collective action claim for unpaid wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Rule 23 class action common law claims for breach of contract and unjust enrichment. (Dkt. 1).[2]

Relevant here, the FLSA claim alleges Inspiro maintained a corporate policy and practice of willfully failing to pay its non-exempt hourly CSRs overtime compensation for off-the-clock work regularly performed. (Dkt. 1 at ¶¶ 88-100). Namely, pre-shift computer boot-up and login time, of approximately 15 to 30 minutes, and mid-shift/post-shift logout time, of approximately 3-5 minutes, occurring every shift. Plaintiff alleges that Inspiro required its CSRs to be ready and able to take calls ("phone ready") when their scheduled shifts began and to log off at breaks and at the end of their shifts, necessitating CSRs to work off-the-clock hours in excess of forty (40) hours per week.

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 17).

[2] This is a putative hybrid case, bringing both a FLSA collective action and a Rule 23 class action. *See e.g. Edwards v. PJ Ops Idaho, LLC*, 2022 WL 2065043, at *1 (D. Idaho June 7, 2022). At issue on the present motion is Plaintiff's request for a Court-authorized notice of a FLSA collective action.

On February 2, 2026, Plaintiff filed the instant motion for Court authorized notice of the collective action under 29 U.S.C. § 216(b), requesting that the Court conditionally certify a putative collective action comprised of all current and former hourly CSRs who worked for Inspiro during the past three years, and approval of the proposed notice submitted by Plaintiff. (Dkt. 1, 30). Inspiro opposes the motion. (Dkt. 36). The Court finds as follows.

## LEGAL STANDARD

Under the FLSA, an employee may bring a collective action against an employer on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b). A collective action under the FLSA differs from a Rule 23 class action because each employee who seeks to join a collective action must affirmatively opt-in to participate in the litigation. *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). "Determining whether a collective action is appropriate falls within the district court's discretion." *Greene v. Cascadia Healthcare, LLC*, 2024 WL 4494902, at *2 (D. Idaho Oct. 15, 2024) (citing *Hanigan v. OpSec Sec., Inc.*, 2022 WL 4465518, at *1 (D. Idaho Sept. 26, 2022)).

The plaintiff bears the burden of showing that plaintiff and the putative collective action participants are "similarly situated." *Id*. The Ninth Circuit uses a two-stage approach to determine whether employees are similarly situated. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). The first stage, known as the conditional certification or notice stage, typically occurs "at or around the pleading stage." *Id*. at 1109. During the first stage, the court determines whether potential plaintiffs are similarly

ORDER - 3

situated based on the pleadings, and may be based on "declarations or limited other evidence." *Id*. (citations omitted). The second stage occurs after discovery and is often where a defendant may move to decertify, which "resembles a motion for summary judgment." *Id.* at 1117. During the second stage, "[t]he district court will then take a more exacting look at the plaintiffs' allegations and the record." *Id*. at 1109. At both stages, the Court is guided by the underlying principle that the FLSA is a remedial statute that must be interpreted broadly. *Senne v. Kansas City Royals Baseball Corp*., 934 F.3d 918, 950 (9th Cir. 2019).

This case is at the first stage, where the plaintiff's burden to show the potential collective plaintiffs are similarly situated is lenient and "typically results in conditional class certification." *Greene*, 2024 WL 4494902, at *2 (quoting *Harp v. Starline Tours of Hollywood, Inc*., 2015 WL 4589736, at *4 (C.D. Cal. July 27, 2015); and citing § 1807 Collective Actions Under the Fair Labor Standards Act, 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed.) ("Thus, although conditional certification has been denied based on a failure to meet these preliminary proof requirements, more commonly it is granted and notice issues at this first certification stage.")). A plaintiff can meet this standard by providing "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single, decision, policy or plan." *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 (E.D. Cal. 2009). However, "[u]nsupported assertions of widespread violations" are not enough to satisfy plaintiff's burden. *Fenn v. Hewlett-Packard Co*., 2011 WL 6150642, at *1 (D. Idaho Dec. 12, 2011). "The evidence does not have to be overwhelming, but it should demonstrate some

ORDER - 4

likelihood that the proposed class members are similarly situated and that more than a minimal number of prospective class members are interested in joining the suit." *Silverman v. SmithKline Beecham Corp.*, 2007 WL 6344674, at *2 (C.D. Cal. Oct. 15, 2007). If plaintiff makes such a showing, the Court will grant conditional certification and notice of the FLSA action is sent to potential plaintiffs. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("The sole consequence of conditional certification is the sending of court-approved written notice to employees[.]").

Once a collective action has been conditionally certified, district courts have discretion to facilitate the process of notifying potential plaintiffs of FLSA collective actions, and have a substantial interest in the language of the notice sent to potential plaintiffs as it reflects the neutrality of the court and, therefore, may appropriately be involved in crafting the language of the notice. *Brown v. CitiCorp Credit Servs.*, 2013 WL 4648546, at *1 (D. Idaho Aug. 29, 2013) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 171 (1989)); *Hanigan*, 2022 WL 4465518, at *1 (same).

## ANALYSIS

### 1. Merits Based Arguments

Preliminarily, Defendant opposes conditional certification by asserting that Plaintiff has failed to identify a common policy, practice, or plan of Inspiro that is unlawful and to which Plaintiff and other similarly situated employees were subjected. (Dkt. 36). In support of its position, Defendant submitted the Declarations of Sarah Bond and Cassandra Ahearn to establish that Inspiro's express pay policies were lawful, and argues the allegations in the Complaint and the Declarations submitted by Plaintiff fail to

ORDER - 5

identify any unlawful common policy or plan, express or *de facto*, and do not show that Inspiro departed from its stated lawful policies. (Dkt. 36 at 7-10). Plaintiff asserts these merit based arguments are improper at this stage of the case and, regardless, are contradicted by the allegations in the Complaint and the Declarations submitted by Plaintiff. (Dkt. 38).

Having reviewed the submissions of the parties and the entire record, the Court finds Defendant's contentions and evidence going to the merits of the claim are premature. At this first stage, the Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Dualan v. Jacob Transportation Servs.*, 172 F.Supp.3d 1138, 1144 (D. Nev. 2016) (quoting *Lynch v. United Servs. Auto. Assn.*, 491 F.Supp.2d 357, 368-369 (S.D.N.Y.2007) (citation omitted)); *see also Villarreal v. Caremark LLC*, 66 F.Supp.3d 1184, 1189-1191 (D. Ariz. 2014). Indeed, many courts reject evidence produced by a defendant that go to the merits of a claim during the initial stage. *Green*, 2024 WL 4494902, at *3. While conditional certification is not automatic, Plaintiff's burden on this motion is low as she need only raise "substantial allegations that the class members were together victims of a single decision, policy, or plan." *Villarreal*, 66 F.Supp.3d at 1189 (marks and citation omitted). "All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Id.* Accordingly, the Court will not address at this time Defendant's evidence and merits based arguments concerning

ORDER - 6

whether Inspiro had a policy, plan, or practice that was unlawful. The Court will discuss below whether Plaintiff has satisfied her burden at this stage to show the potential collective action participants are similarly situated.

### 2. Conditional Certification

At this first stage, conditional certification turns on whether Plaintiff can show the proposed collective action participants are similarly situated. "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. A plaintiff can make this showing by providing "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single, decision, policy or plan." *Kress*, 263 F.R.D. at 627. "[T]he ultimate inquiry at this first-step is to determine whether individuals 'similarly situated' to Plaintiff actually exist and were 'victims of a common policy or plan that violates the law.'" *Richie v. Blue Shield of Cal.*, 2014 WL 6982943, at *9 (N.D. Cal. Dec. 9, 2014) (quoting *McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438, 443 (S.D.N.Y. 2012)). "Significantly, as long as the proposed collective's 'factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.'" *Senne*, 934 F.3d at 948 (quoting *Campbell*, 903 F.3d at 1117).

While the merits of the FLSA claim are not decided at the first step, the elements of an FLSA off-the-clock claim may inform whether the Plaintiff and the proposed members of the collective are similarly situated for purposes of the claim. *Richie*, 2014 WL 6982943, at *8. "In order to prevail on a compensation claim under the FLSA, a

ORDER - 7

plaintiff 'must demonstrate that (1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work.'" *Id.* (quoting *Allen v. Brd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314–15 (11th Cir. 2007); citing *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("[A]n employer who knows or should have known that an employee is or was working overtime must comply with the provisions of § 207. An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for overtime compensation.")). "However, where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Forrester*, 646 F.2d at 414.

Here, the Court finds conditional certification of a collective action is appropriate at this first stage to the extent the FLSA claim is based on Defendant's alleged common policy or practice of failing to pay its non-exempt hourly CSRs for off-the-clock time spent logging into and out of their computers and necessary work applications prior to the start of their shifts, for mid-shift breaks, and post-shift. The FLSA claim asserts that Defendant willfully failed to compensate its CSRs for overtime hours worked performing required off-the-clock tasks. (Dkt. 1 at ¶¶ 2, 12, 88-100). The Complaint alleges that Inspiro CSRs 1) were paid on an hourly basis; 2) were classified as non-exempt employees; 3) used the same timekeeping system; 4) used many of the same computer

programs; 5) were subject to the same relevant timekeeping and attendance policies; and 6) had the primary job duty of providing assistance to Defendant's customers. (Dkt. 1 at ¶ 3). Further, the FLSA claim alleges CSRs were subject to a common policy or plan that violated the law – Defendant's alleged policy or practice requiring CSRs to perform a number of required work-related tasks prior to and after their shifts for which they were not paid. The Complaint alleges Inspiro used its attendance and schedule adherence polices to enforce its common policy and practice of requiring CSRs to perform these tasks off-the-clock. (Dkt. 1 at ¶¶ 4, 7, 34-36, 41-42, 44, 57-59).

In support of this motion, Plaintiff submitted six Declarations from individuals who worked as CSRs for Inspiro that state they were all trained to be "phone ready" at the start of their scheduled shifts, which required that they log into and load essential work-related computer programs and applications prior to the start of their shifts. (Dkt. 30-2 through 30-7). The declarants estimate the off-the-clock tasks took between 15 and 45 minutes, including pre, mid, and post-shift. The Declarations acknowledge they were allowed to clock in five minutes prior to the start of their shifts, but state that they needed to begin the tasks approximately 15-30 minutes prior to their shifts in order to be "phone ready." Notably, the Declarations state that they were "only paid *after* this pre-shift work was completed" and that they were trained "to clock out *before* closing all work applications and systems and shutting down our computers." (Dkt. 30-2, 30-3, 30-4, 30-5, 30-6, 30-7 at ¶¶ 9, 14) (emphasis in original). The declarants contend that Inspiro prohibited them from clocking into the timekeeping software before the start of their shifts and they performed required off-the-clock work after clocking out of Defendant's

ORDER - 9

timekeeping system. The Declarations state that CSRs were informed that the "phone ready" requirement was "strictly enforced through company policy" and that they were trained regarding "company metrics" by which Inspiro monitored CSRs "clock-in times in relation to start-of-shift times, as well as when [they] went into 'phone ready' status." (Dkt. 30-2, 30-3, 30-4, 30-5, 30-6, 30-7 at ¶¶ 10-11). They further declare that Inspiro routinely evaluated CSRs and enforced its company policies and procedures, including its overtime policy prohibiting CSRs from working more than 40 hours in a workweek without prior approval. Declarants state that Inspiro knew CSRs performed these off-the-clock tasks and failed to make any effort to stop or disallow it, because it possessed, controlled, and had access to information and data of the times when CSRs booted-up and logged into their computers each day and what time they clocked into and out of Inspiro's timekeeping system.

Based on the allegations in the Complaint and the Declarations, the Court finds Plaintiff has demonstrated that the proposed collective members are similarly situated as they were all employed by Inspiro as non-exempt hourly CSRs who all claim they were required to be "phone ready" at the beginning of their shifts and to log out during breaks and after their shifts, and were not paid for the off-the-clock time they spent performing the work tasks necessary to meet those requirements. The Court will conditionally certify and authorize notice to the following employees: "All current and former hourly

ORDER - 10

Customer Service Representatives (CSRs) who worked for Defendant at any time in the past three years."[3]

Defendant argues the collective should be limited to individuals employed during the last two years, because the conclusory allegations do not show a willful violation sufficient to apply the FLSA's three-year statute of limitations. (Dkt. 36 at 15). The statute of limitations for FLSA claims is ordinarily two-years, but is extended to three years for willful violations. *Scalia v. Employer Solutions Staffing Grp., LLC*, 951 F.3d 1097, 1102 (9th Cir. 2020) (citing 29 U.S.C. § 255(a)). "A violation is willful when 'the employer either knew or showed reckless disregard for ... whether its conduct was prohibited by the [FLSA.]'" *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). At this stage, the Court finds Plaintiff has sufficiently alleged that the FLSA violations were willful as required to apply the three-year statute of limitations to the conditional certification of the collective. (Dkt. 1 at ¶¶ 34-36, 41-42, 48-49, 57-58, 62-63, 99). Namely, allegations that Inspiro trained its CSRs to perform the off-the-clock tasks when they were not clocked in to the timekeeping system, and required CSRs to be "phone ready" at the start of their shifts which Defendant knew necessitated the CSRs to perform tasks before and after their shifts.

---

[3] Plaintiff's submissions contain slightly different descriptions of the collective, with the Complaint including "hourly" CSRs and "global experts, or similar positions," while the briefing on the motion does not. (Dkt. 1 at ¶¶ 11, 65), (Dkt. 30, 38). Defendant contends any collective must be limited to hourly employees. (Dkt. 36). The Court finds Plaintiff's FLSA claim is plainly based on assertions relevant to hourly CSRs, regardless of the specific job title. Therefore, the collective action is appropriately defined, as stated above, to specify "hourly" CSRs without further reference to particular job titles.

ORDER - 11

Defendant further contests whether the class should be limited to CSRs who worked remotely and to not include those who worked in-person. (Dkt. 36). The Court has carefully considered this argument. The Complaint's general description of the parties identifies Sabrine Walters as "a remote" CSR for Inspiro, and the additional collective members as "remote CSRs in multiple states." (Dkt. 1 at ¶¶ 21, 22). However, the remainder of the Complaint does not refer to or raise allegations concerning whether the CSRs were remote or in-person. The Declarations submitted by Plaintiff are from four individuals who worked as CSRs in-person at Inspiro's Coeur d'Alene, Idaho location, and one individual who worked both remotely and at the Coeur d'Alene, Idaho location. (Dkt. 30-2 through Dkt. 30-7). On the present record, Plaintiff is the only CSR that was exclusively a remote worker.

The Court finds, for purposes of this motion, that the FLSA claim encompasses individuals who worked both remotely and in person. Namely, the claim alleges Inspiro had a policy or practice of not paying its hourly CSRs for the off-the-clock time worked performing tasks required to be "phone ready" at the start of their shifts and mid-shift/post-shift shut down procedures, including turning on, logging into, and loading work-related computer programs and applications, and to reverse the process during breaks and at the end of their shifts. (Dkt. 30). These tasks were allegedly required for all CSRs, regardless of whether they worked in-person or remotely. Additionally, the Court observes that other FLSA collective actions involving call center services have included both in-person and remote employees. *See e.g. Smith v. Kaiser Foundation Hospitals*, 2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) (granting stipulation for conditional

ORDER - 12

certification of FLSA collective action for all current and former hourly telemedicine specialists who worked or have worked for defendant). For these reasons, the Court finds Plaintiff has met her burden at this stage to show that the collective action includes both in-person and remote employees.

Defendant's arguments highlighting differences between the proposed collective members are notable and may prevail on a later motion, but they do not defeat conditional certification at this initial stage. For instance, Defendant argues remote and in-person workers used differing processes for addressing technology issues and had differing work facilities/locations. (Dkt. 36). However, the FLSA claim is not based on allegations related to any particular system used by CSRs to address technology issues or the practices at a given work facility/location. Rather, the claim contests Defendant's alleged common policy or practice of requiring its CSRs to perform tasks of logging into and out of computers and applications before, midway, and after their shifts without pay. The allegations that CSRs often encountered technical difficulties while logging in may be relevant to the amount of time they spent performing off-the-clock tasks, but the FLSA claim itself is not based on the system or process CSRs used to resolve technical difficulties. Further, Defendant's argument that conditional certification should be denied because Plaintiff lacks personal knowledge of practices at other facilities is unavailing given there are Declarations provided by employees at the Coeur d'Alene, Idaho facility as well as an individual who worked remotely part-time. *See e.g., Greene*, 2024 WL 4494902, at *9 (distinguishing cases denying collective certification for lack of personal knowledge). The other distinctions and differences between the proposed collective

ORDER - 13

members raised by Defendant – variations in the amounts of time individuals claim it took to perform the off-the-clock tasks; the programs and applications use by each of the individuals; and the non-CSR job positions held – may prove successful on a later motion, but they do not defeat the finding of similarity among the proposed collective at this stage. (Dkt. 36).[4]

Based on the foregoing, the Court finds, at this first stage, that Plaintiff has demonstrated that the proposed collective participants are similarly situated such that they share a similar issue of law or fact material to the disposition of the FLSA claim. *Campbell*, 903 F.3d at 1117. Conditional certification of the collective is therefore appropriate.

### 3. Content, Form, and Method of Notice

The parties disagree about certain aspects of the content, form, and method of the proposed notice. To facilitate notice of the collective action, Plaintiff requests that Defendant be ordered to provide a list identifying all similarly situated employees and certain information about each individual, Court approval of the proposed notice, permission to distribute the notice via email and text message, and a sixty-day opt-in period with one reminder email. (Dkt. 30, 38). Defendant opposes certain language of the proposed notice as misleading and inaccurate, the request to distribute the notice via text message, and the use of a Quick Response (QR) code for submitting consents to join.

---

[4] In so stating, the Court observes only that the burden and standard applicable at this first stage are different from later stages of the proceeding. The Court makes no determinations at this time about any future motions.

(Dkt. 36). Defendant argues the proposed notice must be significantly revised and suggest the parties be ordered to meet and confer regarding the same. (Dkt. 36).

### A.    Content of Notice

"The FLSA requires courts to provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Greene*, 2026 WL 1296058, at *2 (quoting *Hoffmann–La Roche*, 493 U.S. at 170). Additionally, "'[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.'" *Id*. (quoting *Hoffmann-La Roche*, 493 U.S. at 174). With these principles in mind, the Court has examined the proposed notice of collective action submitted by Plaintiff in this litigation and finds as follows.

Plaintiff's proposed "Notice of Overtime Pay Lawsuit Against Altius Inspiro, U.S., Inc." provides information describing the lawsuit, the FLSA claim, how proposed members can join the lawsuit, the consequences of joining or not joining, and other commentary. (Dkt. 30-9). Attached to the proposed notice are: 1) a "Consent to Join" form; and 2) a "Contact Information" form containing "Additional Terms & Information." Plaintiff maintains the proposed notice is appropriate and fashioned after notices approved in other FLSA collective actions. (Dkt. 30 at 17-18) (citing cases from other districts).[5]

---

[5] Plaintiff contends the proposed notice addresses concerns raised by other courts in this District, but cites only cases from the Central District of California. (Dkt. 30 at 18). In particular, Plaintiff cites to *Hoffman*

ORDER - 15

Generally speaking, the Court finds the proposed notice and attached forms contain superfluous verbiage that is unnecessary to ensure potential collective members are given timely, accurate, and informative notice of the collective action. For instance, the sections in the proposed noticed titled "what happens next?" and "preservation of relevant evidence" are not necessary or appropriate. (Dkt. 30-9). Likewise, the "Contact Information" form and "Additional Terms & Information" is unnecessary as it is duplicative and repetitive. (Dkt. 30-9).

Further, the Court finds Defendant's objections and suggested revisions are well-taken. (Dkt. 36). Importantly, the proposed notice contains language improperly suggesting the Court has taken a position favorable to Plaintiff, drawing into question the neutrality of the Court, that must be revised. The proposed notice also fails to accurately inform potential collective members of the consequences and responsibilities of joining the lawsuit – namely, disclosure about the costs of litigation.

For these reasons, the Court will deny Plaintiff's request to approve the proposed notice and will direct the parties to meet and confer to revise the language of the proposed notice consistent with the direction stated herein, and to submit a joint proposed notice for the Court's review and approval. The parties should model their joint proposed notice on the court-approved notices from the following FLSA collective cases: *Hanigan*,

---

*v. Construction Protective Servs., Inc.*, 2004 WL 5642136, at *6 (C.D. Cal. July 13, 2004), but may have intended to cite *Hoffman v. Securitas Security Servs.*, 2008 WL 5054684 (D. Idaho Aug. 27, 2008). *See Greene*, 2026 WL 1296058, at *2. The Court notes this discrepancy here for purposes of clarity, given the ruling herein directs the parties to consider notices approved in other FLSA cases from this District when they meet and confer to revise the language of the proposed notice.

ORDER - 16

1:22-cv-00064-DCN (D. Idaho Oct. 10, 2022) (Dkt. 41-1); *Hoffman*, 1:07-cv-00502-EJL-LMB (D. Idaho Sept. 25 and 30, 2008) (Dkt. 35, 36).

**B.      Form and Method of Notice**

To facilitate notice, Plaintiff requests that Defendant be ordered to provide a list identifying all similarly situated employees and certain information about each individual, approval of the proposed notice, permission to distribute the notice via email and text message, and allow a sixty-day opt-in period with one reminder email. (Dkt. 30, 38). The proposed notice also includes a QR code as a form for individuals to opt-in. (Dkt. 30-9). Defendant opposes the request to distribute the notice via text message and the use of a QR code for submitting consents to join. (Dkt. 36). Plaintiff maintains the requested format and methods of notice are proper and will achieve the objective of the FLSA to reach as many people as possible and provide timely and efficient notice. (Dkt. 30, 38). Further, Plaintiff contends that distributing notice via text and email is warranted given the realities and efficiencies of modern practices, and that text messaging may be more reliable and fulfill the FLSA's remedial purpose. (Dkt. 30, 38).

"As a general rule, putative collective members are entitled to receive 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Green*, 2026 WL 1296058, at *3 (quoting *Hoffmann-La Roche*, 493 U.S. at 170). While distributing notice by mail and email are routinely used, Courts have expressed concern over the "invasiveness of text message communication" as a means for distributing notice. *Id.* (discussing cases); *see also Bertram v. Stillwater Mining Co.*, 2026 WL 1229593, at *6 (D. Mont. May 5, 2026).

ORDER - 17

The Court finds distribution by mail and email are appropriate and sufficient to provide accurate and timely notice to potential class members in this litigation, particularly given the opt-in period will be sixty days and an email reminder will be allowed mid-way through the opt-in period. However, the Court shares the concerns expressed by other courts regarding the intrusive nature of text messaging and concludes that Plaintiff has not provided a sufficient reason for needing to send notice via text messaging in addition to the other forms of distribution approved herein. *Id.* The request to send notice by text message is therefore denied. (Dkt. 30-10).

Further, the Court will not approve the use of a QR code as a method for submitting consent to join, as the other methods allowed herein are sufficient to achieve the requirements for proper notice and Plaintiff has not shown why or how the use of a QR code is appropriate or necessary in this litigation. *See e.g. Chen v. Thai Greenlief Restaurant Corp.*, 2024 WL 3742718, at *6 (E.D. N.Y. Aug. 9, 2024) (observing courts in the second circuit are hesitant to allow the use of QR codes for potential plaintiffs to opt in to a FLSA collective action).

Finally, Defendant does not oppose the proposed sixty day opt-in time period, the request to send one reminder email thirty days after the initial notice is sent, or Plaintiff's request that Defendant identify potential collective members within fourteen days by providing a list with certain identifying details. (Dkt. 36). The Court finds these proposed and requested terms are appropriate and will approve the same.

ORDER - 18

## 4.  Conclusion

In sum, the Court will grant the request for conditional certification of the proposed FLSA collective, and will direct the parties to meet and confer regarding the language of the court-authorized notice to be issued to the potential collective members consistent the ruling stated herein. The parties shall submit a joint proposed notice to the Court for approval as directed below. The Court will appoint Plaintiff's attorneys as counsel for the FLSA collective, as Defendant has not opposed the same.

## ORDER

NOW, THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for Court Authorized Notice (Dkt. 30) is **GRANTED** in part as follows:

1) The proposed FLSA collective is conditionally certified and defined as: "All current and former hourly Customer Service Representatives (CSRs) who worked for Defendant at any time in the past three years."

2) Plaintiff Sabrine Walters' attorneys are appointed as counsel for the FLSA collective.

3) On or before **July 10, 2026**, the parties must meet and confer regarding the content, form, and method of the notice and the plan for distribution of the notice consistent with this Order, and must submit a joint proposed notice for the Court's review and approval.

DATED: June 12, 2026

Honorable Debora K. Grasham
United States Magistrate Judge

ORDER - 19